I need to start my remarks by making a correction to the record. On page 45 of our opening brief, the heading B uses not, that a jury could not find a lack of a reasonable basis, and obviously our argument is that the jury could. So with that correction, as the court knows, this case, similar to the previous one, is a defamation case, and it revolves around the question of abuse of privilege. Although there's numerous defamatory statements involved in this case, I want to, if I may, focus the court's attention to Mr. Dodson. Mr. Dodson was the source, essentially, of all the defamatory statements, at least the primary ones. Initially, Mr. Dodson told Mr. Gibson that plaintiff had artificially inflated revenue, and later in September, Mr. Dodson told Mr. Basile that plaintiff had intentionally failed to remove bad debt accounts to inflate the revenue. If Mr. Dodson reasonably believed that, then how is that defamation? If there is a lack of an inference or a question of fact as to whether he had a reasonable basis for that belief, that would not be an abuse of the privilege, and on that basis, we would not be able to proceed. We also argue that there's an improper motive behind Mr. Dodson's acts. Let's take those one at a time. If I may start with a reasonable basis? Right. Okay. The key to Mr., in our opinion, or our perspective, the key to Mr. Dodson's lack of a reasonable basis is found in Mr. Mueller's testimony. Remember, Mr. Dodson asserts that there are numerous occasions that staff comes to him and makes and informs him of the basis for his beliefs for these statements of intent. And the problem with that is that Mr. Mueller is the only one Mr. Dodson could identify, and when you go to Mr. Mueller's testimony, Mr. Mueller's testimony is the exact opposite. Let me just ask you, does the fact that Mr. Dodson could not remember the specific identities of those who came to him negate finding that there was a reasonable basis for his belief? It doesn't negate it. It compels a question. It raises a question of fact that keeps the court. It's certainly a jury could find that Dodson had a reasonable belief, but at summary judgment, it keeps the court from finding as a matter of law that there is no question of fact as to a reasonable belief. What case authority are you relying upon to support your argument that an inability to pinpoint the identities of those providing the information raises a material question of fact? I'm not citing a case for that principle, nor is that principle as you stated at our position. It's not the inability to remember others. It's the fact that the sole person that is identified testifies completely opposite. In other words, identify whoever you can. As to this issue, I identify this person. We go and talk to that person, and we establish that person says, I wasn't told that. I wasn't doing that. Let's examine the record. Where in the record are you attributing to Mr. Dodson that he identified Mr. Mueller as supporting his belief? I believe it's ER 106. If we go to ER 106, that'll tell us that Mr. Dodson relied upon Mr. Mueller as being one of the people who had exposed your client.  My citation here is to our opening brief. My citation in my notes is to our opening brief at page 52. And we cite to ER 106, ER 155, 156, ER 107. Okay, so if we look at those pages, your argument is that this will tell us that Mr. Dodson pinpointed Mr. Mueller as the basis for his belief that your client had inflated revenue. Yes, and if it doesn't, I know it is in the record, and I can pinpoint it. But we're relying upon you to assist us in assessing whether there's a material question of fact, and that's why I specifically ask you where that is in the record, so that we can go there and determine whether or not what you say is true, that there's a specific conflict in that. Very good. I have confirmed by looking at the brief that 106 is the correct location. 106, 155, 156. Okay, and then so then we compare that to Mr. Mueller's statement. If we're in the record, it's Mr. Mueller's statement that completely contradicts Mr. Dodson's statement. 155, 156. Okay, all right. And so the reason... Isn't it also true, though, that some of the sales personnel did testify that they were instructed not to pull the van down campus? According to Ms. Grove's investigation, yes, not according to Mr. York. And so I'm sorry. I knew that was going to happen today once, Your Honor. Sorry to the court, Mr. Dodson. Don't we look at all the evidence? We don't parse out the evidence, don't we look at everything? No, you look at everything, but you don't... But the evidence that some people said it doesn't negate the evidence that the one person Mueller can identify to the jury, based on his deposition testimony, says the exact opposite. The inference is that... He doesn't say there weren't any others. He says he couldn't remember. So he says there are multiple ones. But a jury... Some of them did say what he said they said. Right. Well, some others said it. We don't know if it's the ones they're referring to. A jury... What basis of fact, other than pure speculation, is there to believe that the ones who consistently have said the same thing weren't the ones who said it to him? The issue is, what does the jury decide? Does the jury decide that Mr. Dodson, given the chance to identify people in his deposition, comes up with one? And if that one is wrong and is completely opposite, a jury could decide there are no others. A jury could decide that was a lie. Mueller didn't say that. And if that's a lie, there are no others. They're not compelled, as a matter of law, to find that the others that Groves talked to did, in fact, talk to Dodson. They certainly could. But all reasonable inferences go to our favor, not defendants. May I ask, what's your position regarding Ms. Demin's statements? Her statements are listed as allegedly defamatory statements, and there's no further mention of them. Yeah, I believe we withdrew those, conceded in a footnote in the reply that we were no longer relying upon those. And I'm sorry we didn't make that clearer to the court. Counsel, could we get back to the discrepancy you say there is between Mr. Dodson and Mr. Mueller? Now, I'm on page 106 and 107 of the record, Mr. Dodson's testimony regarding Mr. Mueller, which wasn't really definitive. So tell me the exact language on pages 106 and 107 that you rely upon in saying that Mr. Dodson specifically identified Mr. Mueller as making the assertions. You know what I'm going to, if I may, Your Honor, with a minute, what I'd like to do is review that testimony while the other side speaks, and then I'll point it out to the court on rebuttal, if I may. I just wanted to point out that Mr. Dodson did say that he was guessing a little, he was speculating a little, he couldn't be really sure. So just when you address that, address that portion of it. I remember that testimony, and he goes on to identify it though, clearly, after being warned not to speculate. Okay, you can address that on rebuttal. Thank you. And also, when you come back on rebuttal, address Mr. Mueller's testimony and how it conflicted with Mr. Dodson's, if you would. Very good. Thank you. May it please the Court, David Symes for the Defendant Appellee. And if the Court permits, I'd like to pick up exactly where Judge Rawlinson was in that analysis of the difference between what Dodson said and what Mueller said. On 106, Dodson said, first, that his knowledge was based on various salespeople and sales managers telling him that Ms. Moreland was not allowing the salespeople to pull debt and the sales managers to pull debt. He goes on to say, I can't remember who, and I don't want to speculate, but questions persist, and he says Steve Mueller. Then what he says Mueller said to him is, I don't remember the exact conversations. This is over on ER 107. I don't remember the exact conversations, like I said, but the gist of the conversations was that they were no longer pulling any accounts, no longer. So it's at the end of the campaign, not at the beginning. That's important because now let's turn to Mueller's testimony, where he is talking about initially in the campaign. This campaign goes for essentially a year, the sales campaign, whereby salespeople are selling advertising at the beginning, in the middle, and the end of the campaign. It's most important that the bad debt get pulled towards the end of the campaign because that's when the bad debt goes into the book. Mueller says on page ER 155 at line 13, I think there was a lot of, during this time, there was a lot of, depending on what point of the campaign we were in, but initially, when that was the case, when we would collect, when we would, I can't read. When we could not collect, we pulled advertising out of the book. It does not flatly contradict on any way, shape, or form. So the court also made a good point about the time that passed. In the Lund versus Airborne International case, 132 ORAP 87 at footnote 8, the court makes it clear that on a defamation case under Oregon law, you have to create an issue of fact as to the mental state at the time of the statement. A year and a half later at deposition, the fact that a witness can't remember specific names, but gives a lot of detail, is not a question as to the mental state of the speaker at the time. It's a question of what his memory was a year and a half later. And finally, there really was a heck of a lot of evidence that Ms. Moreland was instructing her sales staff, through her sales managers and directly to the sales staff, to not pull debt. We have Moreland admitting that on ER 60. We have Tim O'Connor on SER 76, where he states point blank that Ms. Moreland told him not to take out bad debt. Mitchell at SER 63, saying she told Mitchell not to remove bad debt. Townsend at SER 46 to 47, where he testifies unrefuted that Ms. Moreland had told Townsend to ignore a director's call, that's Gibson, about bad debt. Quinn, the sales manager, right under Moreland, who I'm not sure this is part of the records, I'm not going to say. Quinn was right under Moreland and was responsible for a lot of the interactions between the sales people. He says that Ms. Moreland was trying to beat the system through these efforts. Bozanich, SER 69 to 70, says she was trying to work around the policy, Moreland was. Smith, SER 73, again, told not to remove bad debt. And then Tony Basil, SER 33, plaintiff, Ms. Moreland failed to return his calls to talk about why bad debt was still in the book. Mr. Townsend is working with all these people. He knows these things. He says it. He just doesn't identify it. That is not, in our opinion, fatal to the reasonable belief analysis. A quick word on the personal grudge issue. There was some tension between that. Yeah. Taking the facts most favorable to your part. There was some tension. Though it's, I think, significantly overstated by the plaintiff. The plaintiff says he was a thorn, she was a thorn in his side for a long time. If you read the R-cites, it's kind of a thorn for some time. There's a big difference there. Exactly, Your Honor. There is no evidence of a personal grudge. None whatsoever. It is the natural tension between sales who want to pull in all kinds of contracts and credit who says, you know, hold on. You've got to be sure that these people can pay for their advertising. It's got to be ill will or spite. It's not even just anger. Another word used by the plaintiff in the court below and now here was there was anger. Not true. There's not a word in this record to suggest there's anger. None. Much less the kind of rage that Your Honor will recall in the Walulis case. Nothing like that. There's no evidence of an issue of fact on Mr. Dotson's primary purpose for saying what he said. He said it because he was the credit manager and he was looking at $1.5 million of bad debt in a book that was multiple times higher than any other book, including much larger markets. I'll reserve. It looks like I've got four minutes. I don't have much else to add. And so I'll reserve. You have nothing to reserve. And we as always, nothing that has actually been argued in the briefs is a way to not repeat everything. So understood. Thank you, Your Honor. Mr. Met, you have about a minute left, a little under a minute. Thank you. Judge Rawlinson, excuse me. The testimony you asked me to direct your attention to is on ER 106 and it starts on page 24, line 17. I was told on numerous occasions that they were told they could not pull accounts. Who told you that? Various salespeople and managers. Let's start with the first one that told you that. Who was that? I don't remember the first one. Well, let's talk about anyone. Give me any sales manager. You know, it's been a long time ago, generally talked about in the elevator's parking garage. Can you remember anybody that told you that? We're on to page 25. Yeah, I think I can. But I'd be going to be speculating. What's your Steve Mueller? Now, there's an instruction from counsel. Don't speculate on line 14. Witness okay, acknowledging he shouldn't speculate. So to the best of your, the question then is to the best of your ability, what did Steve Mueller tell you about Ms. Moreland? And it goes on well in substance, et cetera, to the language we talked about. The sites in Mueller, to Mueller are on page 105 specifically. I'm sorry. I misspoke. Thank you. 155. And it's on page six of the testimony there. It's essentially the entire page. I won't read it in the record, but the clear inference is that Mueller is following policy that Moreland testifies was being followed. You try to collect. You go through the sales rep. You go through the manager before you send the collections. You wait as long as you possibly can. You pull it at the last minute. His testimony is completely consistent with that. A reasonable inference is that that's what Dodson was told, not what he claims. And the jury isn't compelled to believe others may have told her response to opposing councils. Note that Mr. Mueller was talking about early in the campaign, which is distinct from when it's time for the book to close. I don't believe that's I don't believe the record establishes that. I think it certainly is ambiguous enough that if it if there is language that supports that inference, it doesn't compel that inference. And at this level, it has to compel it. If it's if there is room for our reasonable inference, I get to a jury and the jury gets to decide which of those inferences is the truth.
judges: Graber, Rawlinson, Moskowitz